WINDOW ROCK DISTRICT COURT

May 24, 1982

No. WR-CV-117-82

FINDINGS OF FACT
OPINION AND JUDGMENT

NAVAJO NATION, Petitioner, v.

NELSON JESUS, HENRY JESUS,
BENNIE LITSON, And any unknown owners,
Respondents.

Honorable Tom Tso, Judge presiding.

The above entitled case came before this court for a hearing on the petitioner's petition for hearing to determine livestock ownership on April 21, 1982; Notice requirement under 3 NTC 1304 (b) and 3 NTC 1305 (a) has been properly complied with; Petitioner were represented by the Office of the Prosecutor; Respondent Nelson and Henry Jesus were present and represented by their attorney, William Shepard, Esq.; Respondent Bennie Litson also present and represented by his attorney, Norman Cambridge, Esq.; The court having received testimonies and evidence from the parties, it makes the following findings of fact:

1. Petitioner in this case is acting through the Navajo Resources Enforcment Agency, which is vested the authority to enforce Tribal Range and Livestock Laws.

2. All the above named respondents are enrolled members of the Navajo Tribe of Indians and presently reside upon the Navajo Indian Reservations.

3. Respondent Litson claims that he is in the business of buying, selling, and trading livestock including cattles and horses. Said business is conducted without any permit, license or permission from either the Navajo Tribe or the Bureau of Indian Affairs.

4. Prior to January 12, 1982, Respondents Nelson and Henry Jesus offered to sell to Bennie Litson certain livestocks of which they claimed they are lawful owners:

 1. One bay gelding with no brand
 2. One black mare with no brand
 3. One bay stud colt with no brand
 4. One sorrel stud shetland with State Brand of O$^H$O on LHH
 5. One sorrel mare with Navajo Tribal brand Y over CL and a -N
 6. One black filly colt with no brand (colt to sorrel mare with Navajo Tribal brand).

5. Respondents Jesus claim that they own the horses since they

were born, and they were never branded because they (Jesus) do not have any grazing permit.

6. Respondents Jesus testified at trial that approximately two (2) years ago the one sorrel stud Shetland came to their home and since then kept the Shetland pony around their home, and to this day nobody has claimed ownership of that Shetland pony.

7. On January 11, 1982 defendant Litson bought said horses from Henry Jesus for a total amount of $300.00.

8. The bill of sale dated January 11, 1982 indicated that the seller Henry Jesus sold to buyer Bennie Litson one black mare, one colt, one bay stud, and one stud, and the bill of sale is authenticated by respondent Nelson Jesus.

9. The transaction took place in Sawmill, Navajo Nation (Arizona) in District No. 18 without the knowledge of the Sawmill Grazing Committee Member, and the animals were removed to Tsaile, Navajo Nation (Arizona), the residence of respondent Litson, which is located in Ditrict 11. The animals were transported without the knowledge of Tsaile/wheatfields Grazing Committee Member.

10. Subsequently defendant Litson attempted to haul said livestock to an auction sale in Aztec, New Mexico while the animals were still unbranded, and in the process of doing so stopped at the Livestock Inspection Station in Shiprock, Navajo Nation (New Mexico) where all the animals were seized.

11. After the animals were properly seized by the Range Enforcement Agency Department, the Department held an administrative hearing on January 20, 1982 at the Office of the Prosecutor in Window Rock, Arizona with the presence of all parties involved.

12. At the administrative hearing the respondents were given opportunity to prove ownership, and in the process of doing so, a Louise L. Begay, C#55,527 was able to produce sufficient proof and proper legal documentation (a Navajo Tribal Grazing Permit No. 17-1896) to show that two of the impound livestock were hers, to wit: one sorrel mare with Navajo Tribal brand Y over CL, and one black filly colt. These animals were released to her and they are not part of the determination of livestock ownership held on April 21, 1982.

13. Pursuant to the testimony and evidence presented, the ownership of the four (4) horses in question are doubtful and therefore should be forfeited to the Navajo Tribe.

14. After the hearing the court invited briefs from the parties on several issues, and up to this date no briefs have been submitted. The court will at this time address several issues which it feels needs discussion:

OPINION

1. DOES THE NAVAJO TRIBAL LAW REQUIRE A BRAND ON ALL LIVESTOCK FOUND WITHIN THE NAVAJO NATION?

There seems to be an assumption that only livestock that are grazing on the Navajo Reservation are required to be branded, and if livestock are kept in a corral, then a brand is not necessary. In this case respondents testified that their animals graze in the immediate area and presents problems because respondents have to go out looking for

-242-

these animals, in attempt to locate them and return to their home.

Those individuals with this assumption are confused on the requirements of a grazing permit and the requirement of a brand.

Title 3 NTC §§ 781(a) states:

"All livestock grazed on the Navajo Reservation must be covered by an authorized grazing permit issued by the Superintendent based upon the recommendation of the District Grazing Committee."

Clearly this law require all livestock grazing on the Reservation to be covered by a grazing permit. There is an indication that one need not have a grazing permit if his animal is to be impounded at all times, and not grazing. In this manner, perhaps the assumption is proper.

The specific statutes dealing with brands are found at 3 NTC Sec. 2001, et. seq. which state the Navajo Tribe shall require every individual owning range livestock to adopt and record a brand and earmark with which to brand and mark such livestock. A brand can be obtained with a grazing permit or applied for from the state. The point is that all livestock must be branded. If an individual has a grazing permit, chances are that he will also be assigned a brand from the B.I.A., and that is the brand that he has to use on his animal. If an individual does not have a grazing permit but has an animal which he keeps impounded all the time, that particular animal also has to be branded and the brand can be obtained through the state. Clearly these sections state that every animal, whether covered or not by a grazing permit, has to be branded. Paragraph 3 NTC §§ 1301 (1) authorizes the livestock inspectors to seize all livestock not branded as required.

Therefore, as a matter of law, all animals either grazing or kept in a corral on the Navajo Reservation has to be branded.

2. IS IT LAWFUL TO BE IN POSSESSION OF A HORSE OR CATTLE THAT IS UNBRANDED?

Based on the court's discussion in point 1, it seems quite clear that it is unlawful to be in possession of an unbranded animal, in fact under 7 NTC 1301 (1), livestock inspectors are directed and ordered to seized all livestock that are not branded as required.

Pursuant to 3 NTC Sec. 1251, et. seq. the livestock inspectors are directed not to grant a certificate of inspection of unbranded livestock and further have the charge to prevent any livestock from being shipped, driven or transported unless identification by proof or by bill of sale is signed by the owner of the livestock.

Therefore, as the matter of law it is unlawful to be in possession of an animal that is not branded.

3. WHO HAS THE AUTHORITY TO AUTHENTICATE BILLS OF SALE?

A bill of sales executed by respondents on January 11, 1982 shows that Henry Jesus was the seller, Bennie Litson was the buyer, and respondent Nelson Jesus was the witness. The question presented

here is whether these respondents have the authority to authenticate bill of sales. If not, is that particular bill of sale legal and valid.

Pursuant to 3 NTC Sec. 1251 (b), livestock Inspectors appointed may authenticate bills of sale of livestock, brands and marks, and deliver certificate of acknowledgement thereto under their hands and seals.

The statute is very clear as to who can authenticate bills of sale - pursuant to the above section livestock inspectors possess and are invested with that ability. Therefore, any bill of sale not authenticated by the livestock inspectors are invalid and are illegal.

Therefore, as a matter of law, I conclude that the bill of sale executed by respondents on January 11, 1982 is void and should be held invalid.

## 4. IS IT LAWFUL TO SELL AND TRANSPORT AN ANIMAL FROM ONE DISTRICT INTO ANOTHER DISTRICT?

In this case the animals were bought in Sawmill, Navajo Nation (Arizona), which is located in District 18, and they were taken into District 11, Tsaile, Navajo Nation (Arizona) without the knowledge of the Grazing Committee members either at Sawmill or Tsaile. Pursuant to 3 NTC Sec. 703 (3), one of the purpose of the grazing regulations is to adjust the livestock numbers to the carrying capacity of the range so that the livestock economy of the Navajo Tribe will be preserved.

Pursuant to 3 NTC Sec. 710 (4), it is a crime to willfully allow livestock to drift from one district to another, and the owner is subject to a trespass action if he permits such drifting.

Based on these two provisions of the Navajo Tribal Code, it is clearly implied that it is undesirable to allow livestock to leave one district and to go into another district.

The law does not specifically prohibit selling and transporting animal from one district to another district, however it should be done with knowledge of the grazing committee member from the area from which the animal is sold and also with the knowledge of the grazing committee member from the area to which the animal is being transported.

## 5. WHAT TYPE OF LICENSE, PERMIT, ETC. IS REQUIRED TO ENGAGE IN THE BUSINESS OF BUYING, SELLING AND TRADING ANIMALS ( LIVESTOCK )?

Navajo Tribal Code, Title 5, Sec. 2301 (a) authorizes the Advisory Committee of the Navajo Tribal Council to negotiate and grant leases of, and permits and licenses for the use of tribal lands for all business purposes, now or hereafter authorized by law and upon such terms and conditions as in the discretion of the Advisory Committee are deemed in the best interests of the Navajo Tribe.

The above law clearly indicates that in order to do business on Navajo Tribal land a license is required, and without a license a business is operated illegally.

Defendant Litson has been illegally operating a business on the Navajo Reservation by trading, selling and buying livestock without a

■

written license from the Advisory Committee of the Navajo Tribal Council.

## JUDGMENT

Based upon the following findings of facts and the opinion of the court, the following order is hereby entered:

1. The (1) sorrel stud Shetland with state brand of $O^1C$ on LHH is not the livestock of Nelson and Henry Jesus, and therefore it was sold to respondent Litson unlawfully, and further since no claim has been made on this animal, the owner is unknown, therefore said (1) sorrel stud Shetland is hereby forfeited to the Navajo Nation.

2. Since the Court is in doubt as to the ownership of (1) bay gelding with no brand, (1) black mare with no brand, and (1) bay stud colt with no brand, they are hereby forfeited to the Navajo Nation.

3. It is further ordered that the fees incurred in impounding and retaining these animals will be borne by the Navajo Nation.